IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:20-CR-120 |
| | : | |
| Plaintiff, | : | JUDGE DOUGLAS COLE |
| | : | |
| v. | : | **UNITED STATES'** |
| | : | **SENTENCING MEMORANDUM** |
| | : | **REGARDING KEYONTE BRONSON** |
| KEYONTE BRONSON, | : | |
| | : | |
| Defendant. | : | |
| | : | |

The United States Attorney's Office submits this sentencing memorandum with respect to Keyonte Bronson.

Based on the factors set forth in 18 U.S.C. § 3553(a) and the facts discussed below, the United States recommends a sentence of 30 months, a term of supervised release, and a $100 special assessment. The government also requests an order of restitution in the amount of $821,445.80, to be made payable to Fifth Third Bank.

I.  THE COURT'S TASK AT SENTENCING.

After the Supreme Court's landmark decision in *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines are advisory, and judges must now impose sentences in accordance with 18 U.S.C. § 3553(a), which describes the factors to be considered. A district court must still use the Guidelines to calculate a defendant's sentencing range and consider the range when devising a sentence. *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 596 (2007).

After calculating the advisory Guidelines range, the Court must consider that range along with all the factors listed in 18 U.S.C. § 3553(a) before arriving at the final sentence. These factors include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) . . . the sentencing range established . . . [by the Guidelines];
>
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . that . . . is in effect on the day of sentencing[;]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## II. NATURE OF THE OFFENSE.

This case involves a widespread scheme whereby bank account information was stolen from Fifth Third Bank by bank employees, then used by an organization of co-conspirators to make withdrawals from bank branches. Bank employees in Fifth Third customer service department took photos on their phones of account information, particularly for accounts that had substantial balances. Using social media or personal contacts, the main fraud ring recruited the bank employees to steal this information and then purchased the stolen account information.

2

The fraud ring then recruited individuals to pose as the true account holder. These recruits are referred to as "runners." The runners were often homeless or destitute people that are recruited by co-conspirators to attempt the withdrawal for a modest cash fee.

The fraud ring used the account information to create false driver's license using a picture of the runner and the information of the true account holder. The fraud ring would drop the runners off at a bank branch with instructions to try to withdraw thousands of dollars from the account. Many of the withdrawals are in the range of $3,000 - 8,000. If the withdrawal was successful, the main fraud ring would take the proceeds and give a token amount to the runners. If the bank detected the fraud and called police, the runner would be arrested while the members of the main fraud ring would flee the area. The members of the fraud ring often referred to the runners or the attempts as "licks" or "L's", which is slang for a hustle or robbery.

At times, a member of the main fraud ring would call back to the bank employee to check on the account balance. This was a way to ensure that the bank had a substantial balance immediately before sending a runner into the bank branch.

This scheme has occurred many times across the Southern Ohio and Northern Kentucky area over a several year span. Fifth Third Bank has provided the U.S. Secret Service with information that listed each account that had been compromised by this scheme.

Multiple suspects admitted to being runners. They were paid to pose as Fifth Third bank account holders to withdraw cash from the victim's accounts. A number of the runners were caught and charged locally, however, the runners were not included in this federal indictment. Instead, this case focused on the bank employees and the main fraud ring.

One circumstance is important to note for context.  Although the bank has a full understanding of the accounts that were compromised, the government does not believe that all of the perpetrators have been identified and caught.  To be clear, this case involves a large number of defendants, but it is not the full universe of the perpetrators involved in this scheme.

In resolving these charges, the bank employees pleaded guilty to a count of bank fraud (not the conspiracy).  As a result, the loss amount for each employee is the best estimate of the bank losses limited to the specific accounts compromised by that employee.  The non-bank employees that participated in the main fraud ring pleaded guilty to the conspiracy charge, and are therefore accountable for the full loss amount related to the broader scheme.

**The Activity of Keyonte Bronson and Juan Leonard.**  As explained above, the stolen bank account information was used to make cash withdrawals at bank branches through recruited runners. Juan Leonard (sometimes called "Tim," "Ace," or "Nick") and Keyonte Bronson (a/k/a "Dom") were identified as co-conspirators in the scheme that would recruit and pick up the runners, provide them with the account information and fake identification, drive them to the bank, and receive the stolen funds.

For example, on October 9, 2018, Cincinnati Police stopped a car with two black male occupants, a white female, and a white male occupant.  During the officer's traffic stop, a search of the vehicle was conducted and three counterfeit ID's were found in the owner's manual that was located in the glove compartment.  One of the counterfeit identifications had the name of a Fifth Third Bank customer who is a victim of this scheme. The officers spoke with the back seat occupants away from the stop location .  The two individuals indicated the black male occupant with dreads was "Tim", however he was later identified as Juan Leonard.  The second black male

4

was "Dom", and was later identified as Keyonte Bronson.[1]  The white female and male had their pictures on the counterfeit identifications.  The female admitted she had made fraudulent withdrawals out of Fifth Third accounts and that Juan Leonard recruited them.  The two said they were paid $500.00 to complete these withdrawals.

Other interviewed runners identified Juan Leonard and Keyonte Bronson as individuals that recruited them to commit bank fraud.  On one occasion, Keyonte Bronson was pulled over by law enforcement after another runner was stopped while attempting a fraudulent withdrawal inside a bank branch.

As another piece of evidence, on 2/21/2019, a runner obtained a $4200 cashier's check from a Fifth Third branch in Alexandria, KY using stolen customer information.  The runner then cashed the cashier's check the same day at a Cold Springs branch.  Bronson's fingerprint was found on the cashier's check.  (The account information was previously accessed by employee Diamond Brocks.)

Search warrant returns for Bronson's Facebook account shows numerous attempts by Bronson to recruit people who work at 5/3 Bank or who want to make money.  Bronson also has communications in which Bronson provides information for some of the 5/3 customers who were victims in the scheme.  Bronson repeatedly talks about the bank call center and recruiting people for the call center.

Bronson's Facebook returns showed that he communicates with a Facebook user called "Sin Wolf", who has been identified as Defendant Patrick Walker.  Bronson and Walker

---

[1] Social media accounts confirm that Knox, Bronson, and Leonard appear to be close associates. Each of their Facebook accounts have several images with exchanges of comments.

communicate about the creation of fake IDs for the bank fraud. They exchange photos of the runners who are dressed up and standing against a wall. From the communications, it appears that Bronson sends the picture and Walker provides the fake ID.

Finally, the evidence indicates that there were other individuals – higher in the fraud ring – that directed Leonard and Bronson and others as part of the scheme. For example, runners reported that, while in the car with Leonard and Bronson, the two would call another person who appeared to be the primary boss or supervisor of the scheme.

### III. SENTENCING GUIDELINES.

A district court must still use the Sentencing Guidelines to calculate a defendant's sentencing range and consider the range when devising a sentence. *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 596 (2007). The base offense level is 7, and 14 levels are added due to the loss amount. 2 levels are added because the offense involved 10 or more victims. 2 levels are added due to the involvement of identity theft.

The PSR calculates a criminal history score of 4 points for Mr. Bronson related to a 2018 attempted possession of fentanyl. This places Bronson in category III. This results in a guideline range of 51-63 months.

### IV. THE GOVERNMENT'S RECOMMENDATION.

The defendant's offense was part of a larger, sprawling fraud scheme that has caused significant harm to the victim, Fifth Third Bank. Not only has the bank been required to cover these losses from the customer accounts, but the bank has had to engage significant time and attention to this investigation. Different defendants played different roles. The bank employees, as a group, bear responsibility because they had a responsibility to the account information and

could have said no. Unfortunately, they sold the information and risked incarceration for rather meager sums of a couple hundred dollars per account. The individuals in the main fraud ring bear greater responsibility, at least in the government's assessment. These defendants instigated the scheme and enjoyed the bulk of the profits.

The government acknowledges that the agreed-upon sentence of 30 months for defendant Bronson (and several of his co-conspirators) is below the guidelines range.

Part of the rationale for the 30-month agreement was to assure that the individuals who received most of the profits (Bronson, Leonard, Palmer, Knox) received a greater sentence than the bank employees who received relatively small amounts of money. More importantly, the 30-month agreements are an acknowledgement that the culpability and the losses for this scheme are spread across a large group of individuals.

Importantly, not all of the perpetrators have been identified and caught. There are still others <u>higher</u> in the scheme who were involved in purchasing the information and executing the overall scheme. Therefore, any attempt to apportion the blame or responsibility is faced with that limitation. The agreed sentence was an attempt to consider all of those factors in resolving the cases.

Based on the circumstances set forth in the PSR and in this sentencing memorandum, as well as the factors in Section 3553(a), the government recommends that the Court impose a sentence of 30 months, a term of supervised release, and a $100 special assessment. The government also requests an order of restitution in the amount of $ 821,445.80, to be made payable to Fifth Third Bank.

Respectfully submitted,

KENNETH L. PARKER
United States Attorney

s/Timothy S. Mangan
TIMOTHY S. MANGAN (069287)
Assistant United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711
Fax: (513) 684-6385
E-mail: Timothy Mangan@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum was served this 13th day of December 2022, electronically upon all counsel of record.

s/Timothy S. Mangan
TIMOTHY S. MANGAN (069287)
Assistant United States Attorney